# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PATRICIA LYNN M.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 20-2170-JWL** |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinions and his finding transferable skills, the court ORDERS judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.  Background

Plaintiff protectively filed an application for DIB on December 14, 2016.  (R. 15). After exhausting administrative remedies before the Social Security Administration

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating the record medical opinions and in accepting the allegedly transferable skills testified by the vocational expert (VE).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order they would be reached in applying the sequential evaluation process.

## II.     Evaluation of the Medical Source Opinions

Plaintiff claims the RFC assessed by the ALJ is not supported by substantial evidence because the only opinions supporting the physical RFC limitations assessed are those of the state agency medical consultants, Dr. O'Day and Dr. Larrison, which were rendered more than a year before the decision and who did not review all of the evidence, resulting in the opinions being stale. (Pl. Brief 12-14) (citing Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012) and medical evidence received after the state agency medical consultants reviewed the record).  She argues, moreover, that the state agency medical consultants' opinions are entitled to the least weight because they neither treated nor examined Plaintiff.  Id. at 14 (citing 20 C.F.R. § 404.1527(c)(2); Robinson v. Barnhart,

4

366 F.3d 1078, 1084 (10th Cir. 2004); and <u>Clifton v. Chater</u>, 255 F.3d 1211, 1213, 1214 (10th Cir. 2001)).  She implies the record contains insufficient evidence to assess RFC and argues, "The ALJ should have fulfilled his duty to develop the record fully and fairly and obtained updated medical opinions from examining and/or treating physicians."  (Pl. Br. 15).  Plaintiff argues the ALJ erroneously accorded little weight to the June 2, 2015 medical opinion of Dr. Holladay as a temporary restriction despite that Dr. Holladay "specifically indicated the restrictions were for an indeterminate amount of time.  There is no indication in the record that Dr. Holladay released [Plaintiff] from the restrictions." <u>Id.</u> at 15-16.  She concludes, "The ALJ did not consider the necessary regulatory factors and did not give legitimate reasons for rejecting Dr. Holladay's opinion."  <u>Id.</u> at 17 (citing <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003) and 20 C.F.R. § 404.1527.

The Commissioner cites record evidence supporting the ALJ's determination (Comm'r Br. 11-14) and argues that an ALJ is not required to articulate his evaluation of all the regulatory factors and that <u>Watkins</u>, which cited extensively to <u>Soc. Sec. Ruling</u> (SSR) 96-2p, is not consistent with current regulatory guidance.  <u>Id.</u> at 14 & nn.7-8.  He argues that the ALJ appropriately evaluated the opinions of Dr. O'Day and Dr. Larrison which are substantial evidence within the meaning of the Act and the regulations.  <u>Id.</u> at 15-17.  He argues the ALJ appropriately discounted Dr. Holladay's opinion.  <u>Id.</u> at 17-18.  Finally, he argues there was no need to further develop the record.  <u>Id.</u> at 19-20.

### A.     Standard for Evaluating Medical Opinions

For claims filed before March 27, 2017, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a

5

claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. <u>Id.</u> § 404.1527(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2020). A physician who has treated a patient frequently over an extended period is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. <u>Robinson</u>, 366 F.3d at 1084; <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); <u>see also</u>,

6

SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2020) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.     The ALJ's Findings**

As relevant here, the ALJ evaluated the medical opinions of four physicians who opined regarding Plaintiff's physical limitations and abilities. These physicians were the state agency medical consultants, Dr. O'Day and Dr. Larrison; Dr. Holladay, the neurosurgeon who performed an anterior cervical discectomy and fusion (ACDF) on Plaintiff in December 2014 and treated her thereafter; and Dr. Jensen, Plaintiff's primary care physician. (R. 23-24). The ALJ accorded great weight to the opinions of Dr. O'Day and Dr. Larrison because they "are familiar with the disability determination process and the Regulations, including the terms of art and legal and medical standards set forth therein. Additionally, they each have specialized training and expertise that make them eminently qualified to render their respective opinions regarding the claimant's … physical ailments," they made comprehensive reviews of the record, their opinions are consistent with the record, and they provided detailed narratives explaining their opinions. Id. at 23. He found the evidence added to the record after they rendered their opinions was cumulative of the prior evidence. Id. He explained, "That is, the additional evidence does not document an appreciable worsening in the claimant's condition since the State [sic] agency consultants' opinions were rendered." Id.

8

The ALJ accorded little weight to the work restrictions Dr. Holladay opined on June 2, 2015, explaining, "These were temporary work restrictions assigned to the claimant prior to the alleged onset date of disability that were not intended to represent the claimant's typical ability to function." (R. 23). Finally, he explained, "The December 11, 2017 statement of Dennis Jensen, M.D. that the claimant has no restrictions is given little weight because it is inconsistent with the weight of the evidence." Id. at 24.

### C. Analysis

As a preliminary matter, the court finds it necessary to address the Commissioner's objection to Plaintiff's reliance on the Watkins case and on SSR 96-2p cited therein. Although the Commissioner is "not retaining the treating source rule in final 404.1520c and 416.920c for claims filed on or after March 27, 2017," Watkins is an opinion based upon the treating source rule, and the Commissioner admittedly "adopted the current treating source rule in 1991." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,853, 2017 WL 168819 (SSA Jan. 18, 2017) (emphases added). Because Plaintiff's claim was filed before March 27, 2017, both the treating source rule and the Watkins opinion control this court's review in this case.

Moreover, the current regulation applying to claims filed before March 27, 2017 continues the practice of giving controlling weight to a treating source opinion that "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." 20 C.F.R. § 404.1527(c)(2). The court notes that on March 27, 2017 the Commissioner

9

issued an order rescinding SSR 96-2p (among others) with an effective date "for claims filed on or after March 27, 2017." 2017 WL 3928298 (SSA 2017); see also, 2017 WL 3928305 (SSA 2017). On April 6, 2017 the Commissioner issued an order "correcting the effective date [of the rescission] to March 27, 2017." 2017 WL 3928297 (SSA 2017). The court notes that this confusing sequence of events might be interpreted to rescind SSR 96-2p effective March 27, 2017, but only for claims filed on or after March 27, 2017, or it might be interpreted to rescind the SSR effective March 27, 2017 for all purposes. Nonetheless, the court need not untie the Commissioner's Gordian Knot because the purpose of SSR 96-2p was "To explain terms used in [SSA] regulations on evaluating medical opinions concerning when treating source medical opinions are entitled to controlling weight, and to clarify how the policy is applied." SSR 96-2p, 1996 WL 374188, *1 (SSA July 2, 1996). Because the treating source rule still applies to this case, because controlling weight might be accorded to a treating physician opinion in this case under the current regulations, and because SSR 96-2p explains how to determine when a treating source medical opinion might properly be accorded controlling weight, the court finds that SSR 96-2p might properly be applied in this case, if necessary.

The ALJ explained his reasons for the weight accorded each medical opinion and the court finds those reasons supported by the record evidence and they are such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Plaintiff's arguments do not compel a different finding. First, Plaintiff argues Dr. O'Day's and Dr. Larrison's opinions were stale based upon later-acquired evidence and the court's opinion in Chapo. In Chapo, the ALJ accorded great weight to the opinion of

a physician who examined the claimant, Dr. Amin.  682 F.3d, 1292.  The court noted, however, that the "medical record obviously underwent material changes in the twenty months between Dr. Amin's report and the ALJ's decision," but the agency did not have Dr. Amin perform another exam or provide him with the updated evidence and seek an updated opinion.  Id.  Thus, the court found Dr. Amin's opinion did "not account for material objective evidence developed long afterward."  Id.  The key, then, to finding an opinion is stale is whether there has been a material change in the objective evidence.  Here, the ALJ found the later-acquired evidence "does not document an appreciable worsening in the claimant's condition since the State [sic] agency consultants' opinions were rendered."  (R. 23).  Plaintiff argues that her condition deteriorated, but the evidence cited does not demonstrate appreciable worsening as noted by the ALJ.  Although, the evidence cited was not reviewed by the state agency medical consultants, it was reviewed by the ALJ.  Plaintiff points to her unsuccessful attempt to return to her work as a nurse, but the ALJ also discussed this evidence, and noted,

> Although this work activity reportedly worsened her back pain, her request for a full work release together with her subsequent work activity as a home health nurse suggests she remains capable of performing at least some other, <u>less demanding work</u> on a regular and continuing basis.

(R. 22) (emphasis added).

Plaintiff also points to Dr. Jensen's progress note on February 21, 2018 in which he states Plaintiff "is only able to do sedentary work which would allow for frequent repositioning (standing/sitting)."  (R. 525).  However, the ALJ found she could do sedentary work represented by work as a hospital admitting clerk, a receptionist, or an

11

appointment clerk. (R. 25). Plaintiff has not demonstrated that these representative jobs will not accommodate the limitations assessed by Dr. Jenson.

Plaintiff's arguments (that the state agency medical consultants were not aware of the later-acquired record evidence) and her failure to recognize that the ALJ was aware of, and cited most of, this evidence implies evidence must be reviewed by a medical source before being relied upon by an ALJ. That is not the case. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo, 682 F.3d at 1288. Even though an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

Plaintiff is correct that the opinion of a medical source who did not examine the claimant is generally considered worthy of lesser weight than the opinion of a treating or examining source. However, the ALJ here explained his bases for discounting the opinions of Dr. Holladay and Dr. Jensen, and those reasons are supported by the record

12

evidence. Plaintiff argues that the ALJ erred in finding Dr. Hollaway's opinion involved only a temporary restriction despite Dr. Hollaway's specifically finding the limitations of <u>indeterminate</u> duration and never having released Plaintiff from the limitations opined. As noted above, the ALJ found that Dr. Hollaway's opined limitations, given on June 2, 2015, "were temporary work restrictions assigned to the claimant prior to the alleged onset date of disability that were not intended to represent the claimant's typical ability to function." (R. 23). This finding is supported by the record evidence. As the ALJ noted, the restrictions were given during the recovery period shortly after Plaintiff's ACDF surgery and were imposed almost 18 months before Plaintiff's alleged onset date of October 27, 2016. Although Dr. Holladay stated the restrictions were of indeterminate duration, indeterminate does not mean permanent, he did not state they were permanent restrictions, and the circumstances of issuance suggest they were of a temporary nature. Moreover, there is no record evidence Plaintiff ever saw or contacted Dr. Holloway after the opinion was rendered. Further, on December 11, 2017, within Plaintiff's alleged period of disability, Dr. Jensen released Plaintiff "to work with no restrictions" (R. 557), and on February 21, 2018 found she was restricted to sedentary work. (R. 525). All this record evidence supports the ALJ's rationale that Dr. Hollaway's restrictions were temporary and "not intended to represent the claimant's typical ability to function." (R. 23). This is a reasonable finding supported by the record evidence and Plaintiff has not shown the evidence compels a different finding. Clearly, the ALJ provided legitimate reasons for rejecting Dr. Holladay's opinion. The court's discussion above makes it clear there was sufficient evidence in the record from which the ALJ might, and did, assess an

13

RFC. Therefore, there was no need for the ALJ to further develop the record or to seek a physical consultative examination.

**III.   Transferable Skills**

Plaintiff points out that she is a "person closely approaching advanced age" within the meaning of the Act and regulations and must, therefore, have skills transferable to semi-skilled or other skilled work to be found not disabled. (Pl. Br. 17-18). She acknowledges that the ALJ found she has transferable skills, "identified by the VE as entering data into a computer, interviewing and relaying information to others, maintain files, complete records, maintain inventory levels, observe and record conditions and reactions." Id. at 18 (citing R. 60); see also (R. 25) (listing skills acquired in past relevant work and jobs to which those skills are transferable). But, Plaintiff argues, "These are, however, extremely basic skills that anyone, given a few months, can master," id., the hospital admissions job "has virtually nothing to do with nursing and the associated primary job duties," id. at 19, a receptionist job or an appointment clerk job "requires no skills found in nursing." Id. She argues, "These are extremely low skill level positions that anyone can learn. It is inaccurate to suggest that nursing provided particular transferable skills." Id.

Plaintiff asserts, "The ALJ certainly did not obtain any information as to the skills acquired by [Plaintiff] in the performance of her job," although a claimant is in the best position to describe what she did, "'how it was done, what exertion was involved, what skilled or semi-skilled work activities were involved, etc. Neither an occupation title by itself nor a skeleton description is sufficient." Id. (quoting SSR 82-41). She argues the

14

ALJ merely asked Plaintiff what she "did – essentially her job title – and how much she lifted." (Pl. Brief 20). She argues "That was the extent of the ALJ's inquiry as to whether her job duties related to her past relevant work and/or the demands of the job. This is inadequate." Id.

The Commissioner argues that in accordance with the regulation regarding transferability of job skills, although the skills Plaintiff learned as a nurse are not coextensive with those required in the jobs testified by the VE and relied upon by the ALJ,

> they clearly entail relevant observation and recordkeeping skills, as indicated by their tasks including interviewing patients or representatives, explaining hospital regulations, compiling data for hospital occupancy, routing information, and entering information into a computer; working in the office of a medical practitioner or other health care facility, designated as an outpatient receptionist or doctor's office receptionist, and performing tasks including recording the nature of contacts and typing memos, correspondence, reports, and other documents; and recording appointments and other information, contacting clients, and receiving and recording payments.

(Comm'r Br. 23-24) (citations to the Dictionary of Occupational Titles (DOT) omitted). He argues that two of the jobs relied upon by the ALJ, hospital admitting clerk and receptionist, have a Specific Vocational Preparation (SVP) level of 4 and the other, appointment clerk, has an SVP level of 3, both of which indicate semi-skilled work within the meaning of the regulations. Id. at 24. He points to the opinion in Jensen v. Barnhart, 436 F.3d 1163, 1167-68 (10th Cir. 2005), accepting a finding of skills transferable to other skilled or semi-skilled work. Id. He argues that although neither an occupational title nor a skeleton DOT description is sufficient information to find

15

transferable skills, SSR 82-41 provides that an ALJ may rely on a VE to resolve such matters, as the ALJ did here.  (Comm'r Br. 24-5).

### A. The ALJ's Findings

As relevant to the issue of transferability of job skills, the ALJ found Plaintiff is able to perform a range of sedentary work limited by additional manipulative, postural, and environmental restrictions. (R. 19).  He found that she had past relevant work as a registered nurse which is skilled work with an SVP of 7.  Id. at 24-25.  He found Plaintiff is an individual closely approaching advanced age.  Id. at 24.  He found that Plaintiff had acquired the following skills from her work as a registered nurse: "entering data into computer, interviews and relays info to others, maintains files, completes records, maintains inventory levels, and observes and records conditions and reactions."  Id. at 25.  He found that with the RFC assessed and the transferable skills acquired from her past relevant work Plaintiff would be able to perform jobs in the economy represented by the three occupations of hospital admitting clerk (DOT 205.362-018), receptionist (DOT 237.367-038), and appointment clerk (DOT 237.367-010).  Id.

### B. Analysis

Plaintiff's argument that the transferable skills found by the VE and relied upon by the ALJ are extremely basic skills that anyone can master in a few months misunderstands the unskilled, semi-skilled, and skilled job classifications provided by the Department of Labor (DOL) and used by the SSA in classifying jobs.  20 C.F.R. § 404.1568 (2018) ("In classifying these occupations, we use materials published by the Department of Labor.").  Unskilled work is defined as work which can usually be learned

16

"in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."  Id. § 404.1568(a).  "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  Id. § 404.1568(b).  It involves the "types of activities which are [] less complex than skilled work, but more complex than unskilled work."  Id.  Skilled work is the most complex work which "may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."  Id. § 404.1568(c).

The DOT defines Specific Vocational Preparation as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT, App. C(II), available online at: https://occupationalinfo.org/appendxc_1.html (last visited Feb. 22, 2021).  There are nine SVP levels defined by the lapsed time typically required for learning:

```
1   Short demonstration only
2   Anything beyond short demonstration up to and including 1 month
3   Over 1 month up to and including 3 months
4   Over 3 months up to and including 6 months
5   Over 6 months up to and including 1 year
6   Over 1 year up to and including 2 years
7   Over 2 years up to and including 4 years
8   Over 4 years up to and including 10 years
9   Over 10 years
```

Id.  The DOT notes that SVP levels are mutually exclusive without overlap.  Id.  Unskilled work generally has an SVP of 1 or 2.  Program Operations Manual System (POMS) DI 25015.017(C)(4).  Semi-skilled work generally has an SVP of 3 or 4.  POMS DI 25015.017(C)(5).  Skilled work generally has an SVP of 5 to 9.  Id. (C)(6).

17

As Plaintiff argues, the transferable skills at issue here are basic skills which can be learned by the typical worker in a few months. As the VE testified, and the ALJ found, the skills at issue here are required by the representative jobs here, of which the appointment clerk job is SVP level 3 and such skills can be learned in over 1 month up to and including 3 months. According to the VE, incidental to her training for, or work as, a registered nurse, Plaintiff learned these skills and used them in performing her skilled work. The point of transferability of skills is that certain workers, because of their age, will have difficulty (difficulty increasing with age) adjusting to changes in work, but if that worker has transferable skills she will not have to learn new skills and will have lesser difficulty adjusting to the change in work. 20 C.F.R. § 404.1568(d); See also, POMS DI 25015.017. Although Plaintiff argues that the skills at issue are "extremely basic," it must be remembered that skills are not required or learned in unskilled work, and the issue in transferability isn't whether the skills are basic but whether the skills will allow the claimant to adjust to a different skilled or semi-skilled job without the need to learn new skills. Id. at § 404.1568(d)(1) ("when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work").

Plaintiff's argument (that the hospital admissions job "has virtually nothing to do with nursing and the associated primary job duties," (Pl. Br. 19), and that a receptionist job or an appointment clerk job "requires no skills found in nursing," id.) misunderstands both the requirements to qualify for benefits under the Act and the meaning of transferable skills as discussed above. In order to qualify for disability benefits under the

18

Act, an individual must be unable "to engage in <u>any</u> substantial gainful activity" not merely her prior occupation.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A) (emphasis added); <u>see also</u> § 423(d)(2)(A) ("An individual shall be determined to be under a disability <u>only</u> if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but <u>cannot</u>, considering h[er] age, education and work experience, <u>engage in any other kind of substantial gainful work</u> which exists in the national economy.") (emphases added).  Thus, the question is not whether the job[s] to which Plaintiff's skills are transferable is related to her previous job, but whether in her previous job she acquired skills sufficient to adjust to another skilled or semi-skilled job without learning new skills.  For a person of advanced age (age 55 or older), the new job to which the claimant's skills are transferable is adequate only if the claimant "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry," 20 C.F.R. § 404.1568(d)(4), but that requirement is not at issue here because at the time the decision was made in this case Plaintiff was admittedly in the younger age category – a person closely approaching advanced age.  20 C.F.R. § 404.1563(d).

       Plaintiff's argument that the jobs don't require skills found in nursing is unsupported by the record evidence and Plaintiff cites no authority for that proposition.  To the extent Plaintiff relies on her citation to the DOT job descriptions of a nurse and of the other jobs at issue, she quotes SSR 82-41, acknowledging, "Neither an occupation title by itself nor a skeleton description is sufficient" to describe the skilled or semi-skilled work activities involved in a particular job.  (Pl. Br. 19).  However, the VE

19

testified at the hearing in this case that Plaintiff's "transferable skills would include entering data into the computer, interviews and relays information to others, maintains files, completes records, maintains inventory levels, observes and records conditions and reactions." (R. 60). And, as SSR 82-41 acknowledges, vocational specialists (specifically defined in the Ruling as "all vocational resource personnel," including vocational experts) "may be necessary to ascertain whether and how these skills are transferable," and may assist the ALJ to determine "[s]kills, levels of skills and potential occupations to which skills from PRW [past relevant work] may be transferred." SSR 82-41, 1982 WL 31389, *4 (SSA Jan. 1, 1982). Moreover, although Plaintiff argues the ALJ did not ask her what her skills were, she does not argue that she does not have the skills identified by the VE and found by the ALJ in this case. As noted above, the ALJ is authorized and encouraged to use a vocational specialist such as a VE in evaluating skills acquired, and transferable skills, and Plaintiff's argument attempts to exalt form over substance in this issue.

Plaintiff has shown no reversible error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 24, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

20